IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRED PHILLIP LOSCO,<br><br>        Plaintiff,<br><br>   vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>        Defendant. | Civil Action No. 2:17-377 |

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 8, 12]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 9, 13]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB")

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

under Title II of the Social Security Act ("Act").  On or about December 24, 2013, Plaintiff applied for DIB.  [ECF No. 4-5 (Ex. 1D)].  In his application, he alleged that since October 31, 2011, he has been disabled due to ADD, OCD, hoarding, anxiety, and asthma.  [ECF No. 4-5 (Ex. 1D); ECF No. 4-6 (Ex. 4E)].  His date last insured is June 30, 2015.  [ECF No. 4-2 at 14].[2]  The state agency denied his claims initially, and he requested an administrative hearing.  [ECF No. 4-4 (Exs. 1B, 4B)].  Administrative Law Judge ("ALJ") William J. Bezego held a hearing on July 21, 2015, at which Plaintiff was represented by counsel.  [ECF No. 4-2, at 26-49].  Plaintiff appeared at the hearing and testified on his own behalf.  Id.  A vocational expert also was present at the hearing and testified.  Id. at 45-48.  In a decision dated August 24, 2015, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act.  [ECF No. 4-2, at 12-21].  Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on January 26, 2017, the Appeals Council denied Plaintiff's request for review.  [ECF No. 4-2, at 1-3].  Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment.  [ECF Nos. 8 & 12].  The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such

---

[2] To receive DIB, Plaintiff must establish that he became disabled prior to June 30, 2015, the date on which his insured status expired, or "date last insured."  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the

3

national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.     WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION EVIDENCE**

The ALJ found that Plaintiff had severe impairments, including asthma, generalized anxiety disorder, obsessive compulsive disorder, attention deficit hyperactivity disorder, and depression disorder. [ECF No. 4-2, at 14]. He then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 15-16. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform medium work but with the following additional limitations: he could not work in areas with concentrated fumes, odors, gases, temperature extremes, or other similar environmental irritants; and he could perform low stress work, defined as work requiring only routine, repetitive tasks; only occasional judgment, decision-making, and workplace changes; and only occasional interaction with public, coworkers, and supervisors. [ECF No. 4-2, at 16-20]. The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. Id. at 20-21.

Here, Plaintiff argues the ALJ's findings are deficient because he did not appropriately evaluate the medical opinions and evidence regarding his mental impairments. Id. at 3-19. Specifically, Plaintiff contends that the ALJ improperly disregarded the medical opinion of his treating psychiatrist, Michelle Barwell. Id.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 404.1527(c)(4).[3]

---

[3] Although the regulations governing the evaluation of medical evidence were recently amended, the

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 404.1527(d)(1), (3); Dixon v. Comm'r of Soc. Sec., 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir.

---

version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. § 404.1527 (2017); 20 C.F.R. § 404.1520c (2017).

2008).

To the extent Plaintiff argues that substantial evidence does not support the ALJ's decision to assign little weight to the treating provider's opinion, I disagree. An ALJ is not required to accept a treating provider's opinion uncritically. Rather, the ALJ must weigh all of the record evidence as set forth above. In the case at hand, the ALJ did exactly that. As shown more fully below, the ALJ reviewed in detail all of the evidence and then properly assigned appropriate weight to the opinion evidence, including the opinion of Plaintiff's treating provider, Dr. Barwell.

Dr. Barwell provided mental health treatment to Plaintiff beginning in January 2012. [ECF No. 4-12 (Ex. 3F)]. Following Plaintiff's initial psychiatric evaluation on January 25, 2012, Plaintiff saw Dr. Barwell on approximately 24 additional occasions prior to the July 2015 administrative hearing. [ECF No. 4-12 (Ex. 3F); ECF No. 4-13 (Ex. 4F)]. Over the course of treatment, Dr. Barwell's diagnoses included depressive disorder NOS, ADHD, OCD, and generalized anxiety disorder. Id.

On July 13, 2015, Dr. Barwell completed a Mental Impairment Questionnaire regarding Plaintiff. [ECF No. 4-14 (Ex. 8F)]. With respect to Plaintiff's "mental abilities and aptitudes needed to do unskilled work," Dr. Barwell checked off that Plaintiff had: "limited but satisfactory" ability to understand, remember, and carry out very short and simple instructions, and to ask simple questions or request assistance; was "seriously limited" in his ability to remember work-like procedures, sustain an ordinary routine without special supervision, and make simple, work-related decisions; was "unable to meet competitive standards" with respect to maintaining attention for a two-hour segment, maintaining regular attendance and being punctual within customary tolerances, working in coordination with or proximity to others without being unduly distracted, performing at a consistent pace without an unreasonable number and length of rest

periods, and being aware of normal hazards and taking appropriate precautions; and had "no useful ability to function" with respect to completing a normal workday and workweek without interruptions from psychologically-based symptoms, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers, responding appropriately to changes in a routine work setting, and dealing with normal work stress. Id.[4] When asked to explain these limitations, Dr. Barwell indicated on the questionnaire that Plaintiff is reactive, has problems interacting with others and getting along with co-workers, has "huge issues" with responding to criticism, and has poor distress tolerance "which makes it almost impossible to work in most environments." Id. With respect to Plaintiff's "mental abilities and aptitude needed to do particular types of jobs," Dr. Barwell checked off that Plaintiff: was "seriously limited" in his ability to adhere to basic standards of neatness and cleanliness; was "unable to meet competitive standards" with respect to interacting appropriately with the general public and maintaining socially appropriate behavior; and had "no useful ability to function" with respect to traveling in unfamiliar places or using public transportation. Id. Dr. Barwell explained that Plaintiff's anxiety makes it impossible to travel in unfamiliar places or take public transportation and that Plaintiff is socially awkward, very reclusive, and inept at interacting with the public. Id.[5]

When asked to indicate Plaintiff's functional limitations as a result of his mental

---

[4] The questionnaire defines "limited but satisfactory" as having "noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week"; "seriously limited" as having noticeable difficulty from 11-20 percent of the workday or work week; "unable to meet competitive standards" as having noticeable difficulty from 21-40 percent of the workday or work week; and "no useful ability to function" as an inability to "perform this activity on a regular, reliable and sustained schedule in a regular work setting." [ECF No. 4-14 (Ex. 8F)].

[5] Dr. Barwell also opined that Plaintiff was unable to meet competitive standards or had no useful ability to function with respect to mental abilities and aptitudes needed to do semiskilled and skilled work. [ECF No. 4-14 (Ex. 8F)]. I do not discuss these limitations in detail here, however, because the ALJ limited Plaintiff to unskilled work. [ECF No. 4-2, at 20-21].

impairments, Dr. Barwell checked off that Plaintiff had "moderate" restriction of activities of daily living; "marked" difficulties in maintaining concentration, persistence, or pace; "extreme" difficulties in maintaining social functioning; and no episodes of decompensation within a 12-month period. Id.[6]

The ALJ gave Dr. Barwell's opinion "little weight" because it was not supported by her own treatment records "showing situational stressors, but consistently unremarkable findings on mental status examinations." [ECF No. 4-2, at 19]. A careful review of Dr. Barwell's records supports this observation. See ECF Nos. 4-12 & 4-13 (Exs. 3F, 4F) (mental status examination notes consistently documenting, inter alia, appropriate appearance, cooperative and alert behavior, normal motor activity, congruent/appropriate/full affect, normal speech, direct/logical/clear thought process, no hallucinations or impulsivity, fair insight and judgment, intact fund of knowledge, and cognition within normal limits). The ALJ further explained that Dr. Barwell's opinion was inconsistent with the GAF scores she assigned to Plaintiff, which ranged from 52-62 over the course of Plaintiff's treatment, indicating only mild to moderate symptoms. Id.[7] Finally, the ALJ pointed to Plaintiff's own testimony that he was able to navigate public transportation. [ECF No. 4-2, at 19, 42]. Inconsistency and lack of support are valid and acceptable factors in weighing opinion evidence. See 20 C.F.R. § 404.1527. For all of these

---

[6] The questionnaire defines "marked" as "more than moderate but less than extreme." It further states that a "marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately, effectively, and on a sustained basis." Id. The questionnaire does not specifically define "moderate" or "extreme." Id.

[7] The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF score of 51-60 denotes "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning," and a score of 61-70 indicates "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." See DSM-IV-TR, at 34.

reasons, I find that the ALJ appropriately discounted Dr. Barwell's opinion and that substantial record evidence supports his conclusion. Accordingly, remand on this issue is not warranted.[8]

## C. WHETHER THE ALJ ERRED IN FAILING TO FIND PLAINTIFF'S LOW BACK PROBLEMS TO BE A SEVERE IMPAIRMENT

The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1521(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs, including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347 F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Here, Plaintiff argues that the ALJ erred in failing to discuss his low back problems in his step-two analysis and contends that the ALJ should have found these problems to be a severe impairment. [ECF No.

---

[8] In his Brief, Plaintiff focuses heavily on the fact that Dr. Barwell's mental status examination notes indicate that Plaintiff's thought content included "obsessions" and describe his mood as "tearful, anxious, stressed, ADHD, and depressed." [ECF No. 9, at 7]. These observations, however, are not inconsistent with the ALJ's findings. To the contrary, the ALJ repeatedly acknowledges and credits these aspects of Dr. Barwell's mental status examinations and accommodates for associated limitations in his RFC finding. See, e.g., ECF No. 4-2, at 19 (citing Dr. Barwell's treatment notes in giving great weight to Plaintiff's GAF scores and the opinion of state agency medical consultant, Arlene Rattan, Ph.D., because "they are consistent with mental status examinations showing anxiety, depression, and obsession, but normal speech, cognition, fair insight and judgment, and intact fund of knowledge"). Plaintiff also complains that there are no physician reports concluding that Plaintiff is "not disabled." [ECF No. 9, at 8]. This point likewise is non-dispositive since it is well-established that whether or not a claimant is disabled under the Act is an ultimate issue for the ALJ, not a physician, to decide. See also Dixon, 183 F. App'x at 251-52.

9, at 8-9]. This argument is without merit.

As an initial matter, the record contains only sporadic references to "low back problems" or back pain. See ECF Nos. 4-9, 4-10, 4-14 (Exs. 2F, 6F) (containing minimal references to back pain in over 85 pages of treatment notes). In addition, Plaintiff did not list back pain as a severe impairment in his disability application. See ECF No. 4-5 (Ex. 1D) (noting that Plaintiff filed for disability due to "ADD, OCD, hoarding, anxiety, and asthma"). Although Plaintiff raised back pain in his hearing testimony, he did so only briefly and stated that his PCP told him the pain was from tension or anxiety and that Vicodin and stretching relieves it. [ECF No. 4-2, at 36]. Plaintiff's attorney did not ask Plaintiff about back pain in his questioning. Id. at 39-44. For all of these reasons, it is difficult to fault the ALJ for failing to evaluate back pain as a severe limitation at step two of his analysis.

Moreover, and, in any event, the ALJ did not deny Plaintiff's application for benefits at step two of the analysis. Rather, the ALJ found in Plaintiff's favor at step two when he concluded that Plaintiff's asthma, generalized anxiety disorder, obsessive compulsive disorder, ADHD, and depression disorder were severe impairments. The ALJ ruled against Plaintiff at steps four and/or five of the sequential evaluation process, after concluding that his residual functional capacity was sufficient to enable him to perform certain work existing in the economy. Furthermore, the ALJ considered all of Plaintiff's alleged functional limitations in making his residual functional capacity determination, including those related to his back pain. [ECF No. 4-2, at 16-18]. In so doing, the ALJ specifically noted Plaintiff's testimony regarding back pain but pointed out that x-rays of Plaintiff's lumbar spine were normal with no evidence of effusion. Id. at 17 (citing Ex. 1F). The ALJ also discussed other factors undermining Plaintiff's credibility including minimal medical treatment during the period at issue and Plaintiff's high level of

independence in activities of daily living, including: living alone, performing personal care tasks, cooking, cleaning, doing laundry, performing yard work, driving up to 5 times per week, and maintaining the yard at his home and at his rental property next door.  Id. at 17-18.

Because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential analysis during which he considered all of Plaintiff's alleged functional limitations, even if he had erroneously omitted back pain as a severe impairment, any such error was harmless.  See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

**D.  WHETHER THE ALJ PROPERLY DETERMINED PLAINTIFF'S RFC**

Plaintiff argues that the ALJ's RFC finding is erroneous because it does not account for Plaintiff's low back impairment in limiting him to medium work and because it does not include all of the mental health limitations contained in Dr. Barwell's report.  [ECF No. 9, at 9-11].  This argument is without merit.

With respect to Plaintiff's alleged low back impairment, as discussed above, the ALJ properly considered Plaintiff's complaints of back pain in his RFC analysis, and appropriately concluded that the evidence did not support the severity of his allegations.  [ECF No. 4-2, at 17-20].  Thus, the failure to include additional limitations related to back pain was not erroneous.[9]  Similarly, as also stated above, the ALJ expressly considered Dr. Barwell's report, but properly

---

[9] Although Plaintiff alleges in his Brief that he is not able to lift over 40 pounds due to back pain, the only evidence he cites to support that allegation is one line of an 11-page function report he filled out in connection with his DIB application on which he stated he could lift "40 pounds max." [ECF No. 4-6 (Ex. 5E)].  Plaintiff does not cite any medical opinions or other record evidence imposing or supporting such a limitation.  As set forth above, the ALJ properly analyzed Plaintiff's subjective pain complaints and concluded that those complaints were not entirely credible because they were not well supported by or consistent with the overall evidence of record including examination findings, diagnoses, treatment, medication and work history, and activities of daily living.  [ECF No. 4-2, at 17-20].

12

discounted the limitations contained therein as inconsistent with the record and/or lacking evidentiary support. Id. Accordingly, the ALJ did not err by not including additional mental health limitations in the RFC finding.

Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Here, the ALJ did not discount Plaintiff's symptoms entirely and included restrictions in his RFC finding related to Plaintiff's credibly-established impairments, including a limitation to medium work with the following additional limitations: he could not work in areas with concentrated fumes, odors, gases, temperature extremes, or other similar environmental irritants; and he could perform low stress work, defined as work requiring only routine, repetitive tasks; only occasional judgment, decision-making, and workplace changes; and only occasional interaction with public, coworkers, and supervisors. [ECF No. 4-2, at 16]. As set forth above, the ALJ supported this RFC finding with substantial evidence, including, inter alia, Plaintiff's treatment records; x-ray results; Plaintiff's GAF scores; medical opinion evidence from state agency consultant Arlene Rattan, Ph.D.; Plaintiff's medication history; Plaintiff's work history; and Plaintiff's activities of daily living. See id. at 16-20 (citing, inter alia, Exs. 2A, 1F, 3F, 4F, 5F, 6F, and Hearing Testimony).

Because the ALJ's RFC generously accounted for the limitations established by the evidence of record, and his findings are supported by substantial evidence, I find that the ALJ did not err in formulating Plaintiff's RFC. Accordingly, there is no basis for remand on this issue.

**E. WHETHER THE ALJ IMPROPERLY DISREGARDED THE TESTIMONY OF THE VOCATIONAL EXPERT AND RELIED ON AN INCOMPLETE HYPOTHETICAL QUESTION**

Plaintiff argues that the ALJ erred by ignoring the vocational expert's testimony that an individual would not be able to be off task fifteen percent of the work day and could not miss more

than two days of work per month in order to remain employed.  [ECF No. 9, at 11-12].  Plaintiff contends that Dr. Barwell's report supports such limitations and, therefore, that the ALJ relied on an incomplete hypothetical question in formulating his RFC.  Id.  I disagree.

It is well-settled that the law only requires the ALJ to accept a VE's responses to hypothetical questions that accurately reflect a claimant's limitations supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  Here, the substantial evidence cited above shows that the hypothetical question the ALJ adopted accurately reflected Plaintiff's impairments.  [ECF No. 4-2, at 20-21, 46-47].  For the reasons set forth above, Plaintiff's arguments that the ALJ improperly evaluated the severity of his impairments and failed to include all of Dr. Barwell's limitations in his RFC finding are without merit.  Although the vocational expert testified that Plaintiff would not be able to perform any work if he was off task at least fifteen percent of the work day and/or was absent from work two or more days per month, substantial evidence of record supports the ALJ's finding that Plaintiff's impairments would not, in fact, cause him to be off task or miss work to this degree.

Because the ALJ properly considered Plaintiff's limitations supported by the record, and the hypothetical question on which the ALJ relied accurately reflected those limitations, I find no error on this issue.

F. **WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S PAIN COMPLAINTS**

Plaintiff argues that the ALJ's assessment of his credibility is defective because he failed to consider his lower back pain in making his credibility determination.[10]  [ECF No. 9, at 12-13]. This argument mischaracterizes the ALJ's opinion and is entirely without merit.

---

[10] Plaintiff also states in a single, conclusory sentence that the ALJ mischaracterized the severity of his mental health complaints.  [ECF No. 9, at 12].  For the numerous reasons already discussed, this argument is without merit, and I need not address it further here.

It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p; see also 20 C.F.R. § 404.1529 (describing procedure for evaluating symptoms, including pain). Ordinarily, an ALJ's credibility determination is entitled to great deference. See Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir. 2014); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

Plaintiff's assertion that the ALJ "makes no mention of Plaintiff's testimony regarding his low back problems and resulting pain and muscle spasms and need for pain medication" in evaluating his credibility is blatantly incorrect. To the contrary, in the paragraph immediately following the section of the ALJ's opinion quoted by Plaintiff, the ALJ directly acknowledges Plaintiff's complaints of back pain attributed to anxiety, but notes that x-rays of Plaintiff's lumbar spine were normal. [ECF No. 4-2, at 17]. As set forth more fully above, the ALJ also notes that Plaintiff's subjective allegations were not entirely credible because they were not supported by and/or were inconsistent with the overall evidence of record, including Plaintiff's examination findings, diagnoses, treatment, prescribed medication, work history, and activities of daily living. Id. at 18 (citing record evidence).

In short, this is not a case where the ALJ failed to discuss Plaintiff's limitations or the reasons for his RFC finding and credibility determinations, thus precluding meaningful review. To the contrary, the ALJ considered Plaintiff's subjective complaints, including his complaints of pain, in accordance with the then-applicable regulations and properly concluded that those

15

complaints were not fully credible and did not limit Plaintiff's ability to perform medium work as restricted by his RFC.  As set forth herein, the ALJ's findings in this regard are supported by substantial evidence.  Plaintiff's disagreement or dissatisfaction with these findings is not cause for remand.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FRED PHILLIP LOSCO,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

    Defendant.

Civil Action No. 2:17-377

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 22nd day of August, 2018, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 8] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 12] is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).